.

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District   Southern District of New York |
|---|---|
| Name (under which you were convicted): <br> Ji Yun Lee | Docket or Case No.: <br> 13 CR 290 (PAC) |
| Place of Confinement: <br> Federal Correctional Institution, Fort Dix | Prisoner No.: <br> 67937-054 |
| UNITED STATES OF AMERICA <br><br> v. | Movant (include name under which you were convicted) <br> Ji Yun Lee |

### MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    United States District Court for the Southern District of New York
    Daniel Patrick Moynihan Courthouse
    500 Pearl Street, New York, NY 10007-1312

    (b) Criminal docket or case number (if you know):  13 CR 290 (PAC)

2.  (a) Date of the judgment of conviction (if you know):  1/14/2015

    (b) Date of sentencing:  1/13/2015

3.  Length of sentence:  120 months

4.  Nature of crime (all counts):

    Count 1 charged conspiracy to distribute and possess with intent to distribute a controlled
    substance in violation of 21 U.S.C. Sections 841 (a)(1), 841 (b)(1)(C), 21 U.S.C. 846.  Count 2
    charged conspiracy to conduct financial transactions, which involved the proceeds of narcotics
    trafficking, in violation of 18 U.S.C. Sections 956(a)(1)(A)(i) and 18 U.S.C. Section 1956(a)(1)(B),
    18 U.S.C. 1956(h).

5.  (a) What was your plea? (Check one)

    (1)   Not guilty ☐           (2)   Guilty ☑           (3)   Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
    or indictment, what did you plead guilty to and what did you plead not guilty to?

    Pleaded guilty to Count 1 and did not plead guilty to Count 2.

6.  If you went to trial, what kind of trial did you have? (Check one)          Jury ☐          Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐   No ☑

8. Did you appeal from the judgment of conviction?   Yes ☑   No ☐

9. If you did appeal, answer the following:

   (a) Name of court:   Second Circuit Court of Appeals

   (b) Docket or case number (if you know):   15-215

   (c) Result:   Dismissed on 07/24/2015 and mandate entered in district court on 09/15/2015

   (d) Date of result (if you know):   9/15/2015

   (e) Citation to the case (if you know):   Not Applicable

   (f) Grounds raised:

    Not Applicable

   (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☑

       If "Yes," answer the following:

       (1) Docket or case number (if you know):

       (2) Result:

       (3) Date of result (if you know):

       (4) Citation to the case (if you know):

       (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐   No ☑

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:

        (2) Docket or case number (if you know):

        (3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑    No ❑

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑    No ❑

    (7) Result:

    (8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:        Yes ❑    No ❑

    (2)  Second petition:    Yes ❑    No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:**

Please see Attachment.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Please see Attachment.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Factual basis did not occur until after sentencing when co-defendants were later sentenced.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Page 6

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue:

    Factual basis did not occur until after Petitioner's sentencing when co-defendants were later
    sentenced.



**GROUND TWO:**

  Please see Attachment.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

    Please see Attachment.

**(b) Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

    A claim of ineffective assistance of counsel could not be rasied in direct appeal as factual basis did not occur until after sentencing when co-defendant Hi Jong Lee was later sentenced.

**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐   No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐   No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐   No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ❑   No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐  No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐  No ☐

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐  No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐  No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐  No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Factual basis for both grounds did not occur until after Petitioner's sentencing when co-defendants were later sentenced.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?        Yes ☐    No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

   Not Applicable

(b) At arraignment and plea:

   Arthur L. Aidala, 8118-13th Avenue, Brooklyn, NY 11228

(c) At trial:

   Not Applicable.

(d) At sentencing:

   Scott E. Leemon, 41 Madison Avenue, 31st Floor, New York, NY 10016

(e) On appeal:

 Pro Se

(f) In any post-conviction proceeding:

 Not Applicable

(g) On appeal from any ruling against you in a post-conviction proceeding:

 Not Applicable

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes ☐ No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ☐ No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:


(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐   No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

> Not Applicable. Sentence became final on September 15, 2015 when Second Circuit Mandate was entered in District Court. See United States v. Marte, 798 F.Supp.2d 511, 514-515 (S.D.N.Y. 2011). Alternatively, it became final on January 28, 2015. See United States v. Moshier, 402 F.3d 116, 118 (2nd Cir. 2005)(unappealed federal criminal judgment becomes final for purposes of calculating time limit for filing a motion to vacate, set aside, or correct when the time for filing a direct appeal expires); Federal Rule of Appellate Procedure 4(b). Please see footnote 1 in the attachment.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
> A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
>> (1) the date on which the judgment of conviction became final;
>> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
>> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

 Vacate conviction and sentence, alternatively, to grant an evidentiary hearing.  Should the Court deny
 the motion in tis entirety, to issue of Certificate of Appealability.

or any other relief to which movant may be entitled.

_____
Robert Hartmann, Stanley L. Friedman

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct

and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

　　　　　　(month, date, year).

Executed (signed) on _____ 1/19/2016 _____ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not

signing this motion.

 Individuals signing the Motion are attorneys of record.  Petitioner is not available and counsel will
 supplement this motion with one signed by Petitioner.

## MOTION TO VACATE CONVICTION AND SENTENCE PURSUANT
## TO TITLE 28 U.S.C. § 2255

### Statement Regarding Prior Proceedings

1.      The judgment of conviction from which Petitioner, Ji Yun Lee ("Petitioner"),

seeks relief was entered on the docket by the United States District Court for the Southern

District of New York on January 14, 2015.  (Docket Entry 118)  On January 23, 2015, the

judgment of conviction was appealed to the Second Circuit Court of Appeals.  (Docket Entry

123)  The Mandate of the Second Circuit Court of Appeals noting the appeal had been dismissed

was entered on the docket of the United States District Court for the Southern District of New

York on September 15, 2015.  (Docket Entry 153)  The conviction became final on September

15, 2015 and, accordingly, this Petition is timely.[1]

2.      Petitioner was charged with conspiracy to distribute and possess with intent to

distribute a controlled substance (Class C Felony) in violation of 21 U.S.C. § 846, 21 U.S.C. §

841(b)(l)(C).  Petitioner's co-defendants in the case were Christina Chai and Hi Long Lee.

3.      The Indictment in this case was filed in the Southern District of New York on

---

[1]Title 28, U.S.C., § 2255 requires a petition be filed within one year of the judgment
becoming final. A judgment which has been appealed unsuccessfully becomes final when the
time for filing a petition for *certiorari* expires. *Clay v. United States*, 537 U.S. 522, 525 (2003).
Petitioner's judgment became final on September 15, 2015.  *See United States v. Marte*, 798
F.Supp.2d 511, 514-515 (S.D.N.Y. 2011) (defendant's conviction for conspiracy to distribute and
possess with intent to distribute Oxycodone became final on the date that the court of appeals
deemed defendant's direct appeal of her conviction to be in default and dismissed the appeal
where there was no indication that defendant was trying to extend the time limit by appealing.)
However, even if Petitioner had not appealed, the deadline for him to file this Petition would
have been one year and fourteen days after the Court entered the judgment on its docket or
January 28, 2016. *See United States v. Moshier*, 402 F.3d 116, 118 (2nd Cir. 2005) (unappealed
federal criminal judgment becomes final for purposes of calculating time limit for filing a motion
to vacate, set aside, or correct when the time for filing a direct appeal expires); Federal Rule of
Appellate Procedure 4(b).

April 17, 2013. Count 1 charged Petitioner and Christina Chai with conspiracy to distribute and possess with intent to distribute a controlled substance, oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841 (a)(1), 841 (b)(1)(C), and 21 U.S.C. 846. Count 2 charged Petitioner and Hi Jong Lee with conspiracy to conduct financial transactions, which involved the proceeds of narcotics trafficking, knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location source, ownership and the control of the proceeds of narcotics trafficking activities, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B), and 1956(h). Count 3 charged that Hi Jong Lee disguised the proceeds of the narcotics conspiracy by making multiple deposits of United States currency in amounts of $10,000 and less, into an account in a financial institution, in order to evade the required filings of CTRs in violation of 31 U.S.C. §§ 5324 (a)(3) & (d)(2); 31 C.F.R. § 1010.311. The Indictment also contained forfeiture allegations.

4.      On August 20, 2014, Petitioner appeared before The Honorable Gabriel W. Gorenstein in the Southern District of New York and entered a guilty plea as to Count 1 of the Indictment.  (Docket Entries 58-59)

5.      On September 29, 2014, Christina Chai was found guilty of Count 1 only of the Indictment following jury trial.  (Docket Entry 72)  Also, on September 29, 2014, Hi Jong Lee was found guilty of Counts 1, 2, and 3 of the Indictment following jury trial.  (Docket Entry 72)

6.      On January 13, 2015, the Court sentenced Petitioner to a 120-month period of incarceration and the entry was docketed on January 14, 2015.  (Docket Entry 118)

7.      On May 22, 2015, the Court sentenced Hi Jong Lee to a 24-month period of incarceration.  (Docket Entry 140).

8.      On August 7, 2015, the Court sentenced Christina Chai to probation for a total

term of five years and 1000 hours of community service.  (Docket Entry 150)


## ISSUE I

**PETITIONER'S SENTENCE MUST BE VACATED BECAUSE IT WAS
SUBSTANTIVELY UNREASONABLE GIVEN THE SIGNIFICANT DISPARITY
BETWEEN THE SENTENCES IMPOSED ON PETITIONER'S CO-
DEFENDANTS, WHO WERE CONVICTED AT TRIAL, BUT YET RECEIVED
SIGNIFICANTLY LIGHTER SENTENCES THAN PETITIONER.**

Among the factors a sentencing court must consider pursuant to Section 3553(a) is "the

need to avoid unwarranted sentence disparities among defendants with similar records who have

been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6)

Based on the contrast of the sentences imposed upon the two individuals who proceeded

to trial and were convicted, and Petitioner who pleaded guilty, the District Court committed plain

error because Petitioner's sentence created an unwarranted disparity between the sentences

imposed upon him and each of his co-defendants.

As set forth above, Petitioner pleaded guilty and yet received a significantly harsher

sentence than the other two defendants who proceeded to trial and were convicted.  As such, in

this case, there is unwarranted disparity.  *See United States v. Wills*, 476 F.3d 103, 110 (2d

Cir.2007), abrogated on other grounds by *United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008)

(a district court may compare co-defendants' sentences to avoid unwarranted sentencing

disparities); *United States v. Fernandez*, 443 F.3d 19, 31 n. 9 (2d Cir. 2006) (language of §

3553(a)(6) does not on its face restrict the kinds of disparity a court may consider); *United States

v. Walker*, 439 F.3d 890, 893-94 (8th Cir. 2006) (assuming without extensive discussion that §

3553(a)(6) requires consideration of co-defendant disparity); *United States v. Parker*, 462 F.3d
273, 277 (3d Cir.2006), *cert. denied* 549 U.S. 987, 127 S.Ct. 462, 166 L.Ed.2d 329 (2006)
(holding that a district court is not required to consider sentencing disparity among
co-defendants, but is permitted to do so in certain circumstances and in a particular manner).

### ISSUE II

**THE SENTENCE THE DISTRICT COURT IMPOSED MUST BE VACATED BECAUSE OF COUNSEL'S INEFFECTIVE ASSISTANCE WHEN HE FAILED TO ADVISE THE COURT OF PETITIONER'S FATHER'S AND MOTHER'S HEALTHCARE NEEDS AND THE NEED FOR PETITIONER'S ASSISTANCE IN PROVIDING FOR THEIR NEEDS.**

When this Honorable Court sentenced Hi Jong Lee (i.e., Petitioner's father), after
Petitioner's sentencing, it learned of significant health problems of the father. Yet, earlier, prior
to Petitioner's sentencing, Petitioner's defense counsel failed to call this Honorable Court's
attention to these critical health problems and likewise failed to call attention to the fact that it
was important for Petitioner to be out of custody so that he could assist in his father's care. *See*
*United States v. Smith*, 590 F.3d 570, 575 (8th Cir. 2009) ("court granted [defendant] a variance
based on his poor health and that of his mother. . .")

A comparison of the Presentence Report of Hi Jong Lee (¶ 90) and the Presentence
Report of Petitioner (¶ 63) reveals that Petitioner's counsel failed to provide either the Probation
Office or this Honorable Court with accurate information about both the healthcare problems of
Hi Jong Lee or the compelling need for Petitioner to continue to provide care to his sick and
elderly father. This Honorable Court is respectfully invited to compare and contrast the two
paragraphs (i.e., the Presentence Report of Hi Jong Lee at ¶ 90 and the Presentence Report of

4

Petitioner at ¶ 63) which evidence that the Court was not provided with accurate information at the time that it fashioned the sentence for Petitioner. Likewise, attached hereto is a Declaration of Robert Hartmann who interviewed the family and discovered that Petitioner's mother also has significant health problems and needs the assistance of Petitioner. The Sixth Amendment to the United States Constitution guarantees to the criminally accused the "right to have the assistance of counsel for his defense." Enjoyment of the right to assistance of counsel would be meaningless if the assistance counsel provides is ineffective. *McMann v. Richardson*, 397 U.S. 759 (1970); *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980). Therefore, where counsel's assistance falls below an objective standard of reasonableness and prejudices the defense, counsel is ineffective and the defendant is entitled to relief from the prejudice. *Strickland v. Washington*, 466 U.S. 688 (1984).

*Strickland* established a two-prong analysis for determining whether a defendant's Sixth Amendment right to assistance of counsel has been violated by his counsel's ineffectiveness. The first prong requires the defendant to show that the representation his counsel rendered was deficient, in that the errors counsel made were so serious he was "not functioning as the 'counsel' guaranteed by the Sixth Amendment" so that the representation he provided fell below an objective standard of reasonableness. 466 U.S. at 687-688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). Acts and omissions that fall "outside the wide range of professionally competent assistance" satisfy this first prong of *Strickland*.

The second prong requires the defendant show his counsel's ineffective representation caused him prejudice and, accordingly, rendered the outcome of the proceeding in which counsel was ineffective unreliable.

5

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In this regard, the possibility of an increased prison sentence flowing from counsel's error constitutes the prejudice that satisfies *Strickland*'s second prong. *Glover v. United States*, 531 U.S. 198 (2001) (counsel's failure to raise a grouping argument, which exposed the defendant to an additional six to twenty-one months in jail, constituted prejudice triggering, *Strickland* relief.)

The constitutional guarantee of effective assistance of counsel extends to plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The importance of counsel's role at this stage cannot be understated because, as the Supreme Court has noted, the plea bargaining process is a critical stage of the criminal process.

"Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. See Dept. of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, Table 5.22.2009, http://www.albany.edu/sourcebook/pdf/t5222009.pdf (all Internet materials as visited Mar. 1, 2012, and available in Clerk of Court's case file); Dept. of Justice, Bureau of Justice Statistics, S. Rosenmerkel, M. Durose, & D. Farole, Felony Sentences in State Courts, 2006–Statistical Tables, p. 1 (NCJ226846, rev. Nov. 2010), http://bjs.ojp.usdoj.gov/content/pub/pdf/fssc06st.pdf; *Padilla, supra*, at ––––, 130 S.Ct., at 1485–1486 (recognizing pleas account for nearly 95% of all criminal convictions). The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials,' *Lafler, post*, at 1388, 132 S.Ct. 1376, it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. 'To a large extent ... horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system.' Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992). See also Barkow, Separation of Powers and the Criminal Law, 58 Stan. L.Rev. 989, 1034 (2006) ('[Defendants] who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate,

6

because the longer sentences exist on the books largely for bargaining purposes. This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial' (footnote omitted)). In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

To note the prevalence of plea bargaining is not to criticize it. The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties. In order that these benefits can be realized, however, criminal defendants require effective counsel during plea negotiations. "Anything less ... might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.' " *Massiah*, 377 U.S., at 204, 84 S.Ct. 1199 (quoting *Spano v. New York*, 360 U.S. 315, 326, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (Douglas, J., concurring))."
*Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 1407-1408, 182 L.Ed.2d 379 (2012)

Thus, a determination of counsel's effective assistance at the pretrial stage does not focus solely on trial preparation. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) ("The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice.").

When the requirements of the Sixth Amendment are superimposed on the workings of the criminal justice system, two principles are clear. First, counsel must know the guidelines' structure and content and how his client would fare if convicted at trial. *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("Because the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings, we can say, however, that familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."). Second, counsel must accurately relay this information to his client so that he

7

understands what he faces if the conviction comes as a result of a plea versus a jury verdict and can make an informed decision how to proceed. *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.") When counsel does not he has acted ineffectively. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) ("When the defendant lacks a full understanding of the risks of going to trial," counsel's performance falls below an objectively reasonable standard.)

The case law provides guidelines for analyzing Petitioner's claims of ineffective assistance of counsel for his counsel's failure to adequately describe both to the prosecutors and this Honorable Court his father's and mother's healthcare needs and the importance of Petitioner to provide for such needs. *Lafler v. Cooper*, 132 S. Ct. at 1387 ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."). In negotiating a plea agreement, and presenting defendant's case to the Court, defense counsel was ineffective when he failed to set forth Petitioner's father's and mother's health problems and his need for care from Petitioner. *See United States v. Smith*, 590 F.3d 570, 575 (8th Cir. 2009) ("court granted [defendant] a variance based on his poor health and that of his mother. . .")

## Conclusion

The disparity of sentences, and the fact that those who proceeded to trial received much more lenient sentences than Petitioner, highlight the deficiency of counsel in both negotiating the plea agreement and in describing to the Probation Office and this Honorable Court the healthcare needs of his father and mother and the necessity of Petitioner to provide for their needs.

WHEREFORE, Petitioner respectfully requests this motion be granted or, at a minimum, set for an evidentiary hearing.[2] To the extent that the motion is denied outright, Petitioner requests the Court to issue a Certificate of Appealability. *See* 28 U.S.C. §2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . (B) the final order in a proceeding under section 2255."

Dated: January 19 2016.

/s/ Robert Hartmann
Robert Hartmann
The Hartmann Law Firm
Attorney for Petitioner Ji Yun Lee

Dated: January 19 2016.

/s/ Stanley L. Friedman
Stanley L. Friedman
Law Offices of Stanley L. Friedman
Attorney for Petitioner Ji Yun Lee

---

[2] *See* Title 28 U.S.C. § 2255(b), which states as follows:
"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

## DECLARATION OF ROBERT HARTMANN

I, Robert Hartmann, being duly sworn, deposes and says:

1. I have been admitted Pro Hac Vice by this Honorable Court in the case of United States v. Ji Yun Lee, Case No, CR-13-290. Along with Stanley L. Friedman, I represent Mr. Lee.

2. Mr. Lee has three siblings: Christine Lee, Jung Lee and Jae Lee. I have spoken with Christine and Jae Lee multiple times regarding their father Hi Jong Lee and mother Soon Ja Lee's medical conditions, and the siblings ability to care for the parents as they continue to age. The following is based on comments relayed to me by Christine and Jae Lee, and on information and belief.

   a. Hi Jong Lee currently requires a great deal of medical care, and upon his release when it is not provided in the institutional setting of the Bureau of Prisons, to survive, he will need someone to assist him with getting to doctors appointments, obtaining appropriate medications, assistance in taking medications as often and in the amount prescribed and in getting to and from the store to make sure he gets the sustenance he needs. He will need help getting around the house, feeding himself, cleaning himself, and in general, extensive supervision.

3. In Mr. Lee's absence, the mother will not be able to care for Hi Jong Lee. She too suffers from serous medical problems including neurological issues that make it not only impossible for her to care for her husband upon release, but she too is going to need help as she ages.

4.  There will be no one able to help take care of the father, and the mother, upon the father's release from custody within the next 12 months.

    a.  Their daughter Christine Lee indicates she is a practicing pharmacist with a major retailer, and is required by her employer to work at different stores in the New York and New Jersey region every day.  Although she currently resides at home with her mother, she cannot care for her during the day; when her father is released, it will similarly be impossible.  I am informed and believe that it is not possible for her to stay at home with her parents caring for them; to do so would compromise her job.

    b.  Their son Jae Lee, his wife and young daughter reside in Orange County California where he maintains a restaurant business.  His daughter goes to school there, and the family has its life in that region of the country.  I am informed and believe it is not realistic they move across the country to take care of his father upon his release.

    c.  I am informed and believe another sibling Jung Lee is nowhere to be found.  No one in the family knows his whereabouts and it is extremely difficult for any one in the family to contact him.  He has a very poor relationship with the parents.  I am informed and believe that he is not available to care for the parents, and in any event is not reliable enough, given the severity of their medical problems, to provide them with the needed amount of care.

5.  Prior to his incarceration on this case, Ji Lee provided for his parents needs.  Upon release, I am informed and believe he can do the same, better than any other

family members.  He is experienced in taking them to physicians and to obtain

their medications, and in providing them with the attention and care they need as

they continue to get older and their illnesses become more pronounced.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing to true and correct.  Executed at Newport Beach, California, this 18th day of

January 2016.

Robert Hartmann